ERVIN, Judge,
dissenting.
I agree that the stop of the automobile was permissible since it was operated late at night in violation of Section 816.220(l)’s requirement that every motor vehicle be equipped with at least two headlamps. As such, the officer had the right to stop and request the driver to produce his driver’s license. The request, however, to Wilkerson, a passenger, for identification because of the officer’s “founded suspicion” that criminal activity existed was an altogether different matter. In my view the officer had no right to make that request absent consent, probable cause, or a reasonable suspicion that Wilkerson was armed and dangerous.
Since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Fourth Amendment has been enforced against the states through the due process clause of the Fourteenth Amendment. I do not think the states are free to admit into evidence articles seized on grounds less than probable cause except in these narrowly defined exceptions recognized by the United States Supreme Court. While the states may develop rules governing arrests and searches and seizures to meet the practical demands of effective criminal investigation, “those rules [may] not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain.” Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). An additional caveat is that such standards “may not, ., authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which [a state] attaches to such conduct.” Sibron v. New York, 392 U.S. 40, 60-61, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). More recently in Dunaway v. New York, - U.S. -, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979), the Supreme Court refused to extend the reasonable or founded suspicion standard to justify the admission of evidence obtained from a suspect following a lengthy detention, concluding that only probable cause could be applied:
A single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront. Indeed, our recognition of those dangers, and our consequent reluctance to depart from the proven protections afforded by the general rule, is reflected in the narrow limitations emphasized in the cases employing the balancing test. For all but those narrowly defined intrusions, the requisite “balancing’’ has been performed in centuries of precedent and is embodied in the principle that seizures are “reasonable” only if supported by probable cause, (emphasis supplied)
In order to determine whether the facts of this case fit within “those narrowly defined intrusions”, it is necessary to examine carefully those cases decided by the United States Supreme Court, involving less stringent standards than probable cause, which were relied upon by the states or the federal government to justify the particular intrusion.
Before Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) was decided., the Fourth Amendment’s guarantee against unreasonable searches and seizures of persons and automobiles was analyzed in terms of arrest, probable cause for arrest and search, and warrants based on probable cause. Dunaway v. New York, supra, 99 S.Ct. at 2254. Terry for the first time recognized an exception to the requirement that Fourth Amendment seizures of persons must be based on probable cause. The Court found that the facts before it, involving only a brief detention of a suspect and a frisk for weapons, did not fit comfortably within the concept of arrest, therefore the probable cause standard would not be applied. However, since the seizure of the suspect was a “serious intrusion upon the sanctity of the person”, 392 U.S. at 17, 88 S.Ct. at 1877, the Court tested the detaining officer’s conduct “by the Fourth Amendment’s general proscription against unreasonable searches and seizures.” 392 U.S. at *65 20, 88 S.Ct. at 1879. And, in evaluating the reasonableness of the officer’s actions, the court balanced the violation of the individual’s privacy rights against the public’s interest in preventing crime and in the officer’s safety. In the balance which was struck as to the seizure or detention of the suspect only, the intrusion would be held reasonable if the police officer could “point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that” criminal activity is afoot. 392 U.S. at 21, 88 S.Ct. at 1880. However, a reasonable suspicion that criminal activity was present is not by itself sufficient to justify the frisk. It is necessary also for the officer to observe facts[1] which lead him reasonably to conclude “that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, . . . .” 392 U.S. at 24, 88 S.Ct. at 1881. If the officer was aware of such facts, he could initially conduct a pat-down of the outer clothing of the defendant, and, if the officer felt that which appeared to be a weapon, he was consequently justified in removing it.[2]
Later cases of the United States Supreme Court, permitting searches on grounds less than probable cause, have never extended the scope of the search to any object other than weapons. Such searches are allowed only after the officer demonstrates facts leading to the reasonable conclusion that the suspect was armed and posed a threat to his safety. Cases approving limited weapons frisks include: Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (frisk for weapons of a person seated in an automobile based on information supplied by an informant that the person was in possession of a firearm and narcotics); Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (frisk for weapons was justified when an officer noticed a bulge under the defendant’s jacket following officer’s order to leave car after it was lawfully stopped for a traffic violation); Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (frisk for weapons which revealed burglary tools upon facts giving rise to reasonable belief that a burglary was being committed). On the other hand, the United States Supreme Court has disapproved searches of individuals and vehicles on grounds less than probable cause in the following cases: Sibron v. New York, supra (search for narcotics in the absence of any facts from which searching officer could infer the individual was armed and dangerous); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (warrantless searches of vehicles and their occupants who were suspected to be illegal aliens not permissible in the absence of probable cause except when conducted at the border or at its functional equivalent); United States v. Ortiz, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) (searches of vehicles and their occupants at traffic checkpoint removed from the border invalid since they failed to comply with probable cause); Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (seizure of marijuana seen in plain view suppressed because officer had no right to stop the vehicle in the absence of reasonable suspicion that the motorist was unlicensed, the automobile not registered or otherwise subject to seizure *66 for violation of the law); Dunaway v. New York, supra (confession and other evidence obtained following interrogation at police station, after defendant had been picked up only on suspicion).
The court has permitted stops of vehicles not involving searches on less stringent standards than probable cause in the following cases: United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (roving border patrol stop of a vehicle permissible if officers have facts which reasonably warrant suspicion that the vehicles contained illegal aliens); United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (brief investigatory stops of vehicles at reasonably located checkpoints removed from the border permissible even in the absence of probable cause or without any individualized suspicion of facts indicating illegal entry into the United States).
The theme running throughout the above cases is clear: If the on-the-street intrusion is limited to a brief stop involving nothing more than a few questions, it will be permitted if the investigating officer can “point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant” the belief that the intrusion is necessary to vindicate the public interest in investigating crime. Terry v. Ohio, supra, 392 U.S. at 21, 88 S.Ct. at 1880. And, within the context of automobile stops, the officer may question the driver and passengers about reasonably suspicious circumstances, and may ask them to explain them, “but any further detention or search must be based on consent or probable cause.” United States v. Brignoni-Ponce, supra, 422 U.S. at 881-82, 95 S.Ct. at 2580. But, if the intrusion involves a search in addition to a stop, the search will be permitted on grounds less than probable cause only if the officer has reasonable suspicion to believe both the presence of criminal or illegal activity and that the person with whom he is dealing is “an armed and dangerous individual.” Absent the existence of both circumstances, the officer has no right on grounds less than probable cause or consent to conduct a search.
It is the total absence of any facts leading the detaining officers to conclude that Wilkerson was armed and dangerous which convinces me that the key taken from his pocket must be suppressed. Only after Officer Munro, standing on the passenger’s side of the car, saw the television set in the rear of the car with the number 145 displayed on it, did he request identification from Wilkerson. His motivation for such request was obviously prompted by his suspicion that the television set was stolen. Observe his testimony:
Q. All right, had you ever seen a number written on top of a TV set before? Did you associate the TV set with the number on top of it with anything else you had ever encountered before?
A. Only motels. It’s quite common in motels to write the number on a TV in a conspicuous place.
Q. Is that what went through your mind?
A. That was my first instinct.
Q. At that time of night?
A. Yes.
Q. You asked the passenger for some ID then?
A. That’s correct.
Q. You then saw the motel key in his pocket?
A. Yes.
Had Officer Munro observed a bulge in Wilkerson’s clothing which led him reasonably to believe that Wilkerson was armed with a weapon, a pat-down of the suspect’s outer clothing would have been justified. Those facts do not exist. Under the circumstances, Officer Munro could ask Wilkerson only a few questions about the presence of suspicious activity. Any further intrusion, such as a request for identification, could only be justified on consent, a circumstance which not even the state contends existed, or probable cause. Cf. United States v. Brignoni-Ponce, supra. Moreover, neither of the two officers ever contended that they had probable cause to arrest the defendant for the theft of the *67 television set at the time the demand was made to Wilkerson for identification. Indeed, they were not aware that the set was stolen until after the key was taken from Wilkerson and a call placed to the motel. “It is axiomatic that an incident search may not precede an arrest and serve as . its justification.” Sibron v. New York, supra, 392 U.S. at 63, 88 S.Ct. at 1902.
I would not go so far as to say that the two officers could not extend the detention of Wilkerson and his companion at the scene for such reasonable period of time necessary to ascertain by a call to headquarters whether a numbered television set had been recently stolen from a motel.[3] Had the officers received such information, they may have been authorized to arrest the two persons without a warrant since they possessed facts leading them to believe that a felony had been committed, and could then have conducted a search reasonably incident to the arrest. Under the circumstances, however, they had no right to demand that Wilkerson produce identification in the absence of probable cause to arrest, or reasonable suspicion to believe that Wilkerson was an armed and dangerous individual, or consent.
I fail to see any legal justification for the request and would reverse.

. A later case, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), expanded the rule stated in Terry not only to suspicious activity directly observed by the detaining officer, but also to information relayed to the officer by another.

. Commenting upon the Terry rule, the Duna-way court stated:
[T]he application of this balancing test led the Court to approve this narrowly defined less intrusive seizure on grounds less rigorous than probable cause, but only for the purpose of a pat-down for weapons. 99 S.Ct. at 2255
Florida courts have hitherto followed the above rule in a number of recent cases: St. John v. State, 356 So.2d 32 (Fla. 1st DCA 1978); Meeks v. State, 356 So.2d 45 (Fla. 2d DCA 1978); Fraley v. State, 374 So.2d 1122 (Fla. 4th DCA 1979). Moreover Florida’s Stop and Frisk Law, Section 901.151(5), Fla.Stat (1977), complies with Terry by requiring the frisk to extend only to that area necessary to disclose the presence of a weapon.

. Such action would be in compliance with the provisions of Section 901.151(3), proscribing a detention longer than is reasonably necessary and “beyond the place where it was first effected .”